CARLETON (POOR v.). See Case No. 11,-272.

## Case No. 2,409.

CARLETON v. The ROANOKE.

[N. Y. Times. Oct. 1, 1855.]

Circuit Court, S. D. New York. Sept. 28, 1853.

COLLISION—STEAM AND SAIL—LOOKOUT—SPEED OF STEAMER.

[A schooner while ascending the Elizabeth River, Va., close hauled on the starboard tack, at the rate of four knots an hour, out of the channel, on the easterly side, near the shoals, the wind south and the night dark, was run down by a descending steamer, proceeding at the rate of six knots an hour. When three or four miles apart, the schooner showed a light, which she kept hoisted until the collision. Those on the steamer saw the light, but lost sight of it, and thinking it on the western shore, ported the steamer's helm until the light was again seen, at which time the vessels were about a mile apart. Held, that the steamer was in fault for failing to keep a proper lookout or to slacken her speed or come to anchor after ascertaining the schooner's true position.]

[Appeal from the district court of the United States for the southern district of New York.

[In admiralty. Libel by Dexter Carleton and others against the steamship Roanoake for damages sustained by collision. From a decree for libelants, the claimants appeal.]

Benedict, Scoville, and Benedict, for libelants.

Mr. Davies, for appellants.

Before NELSON, Circuit Justice.

The libel in this case was filed against the Roanoke to recover damages for a collision happening on the Elizabeth river, in the state of Virginia, on the night of the 17th of October, 1852, by which the schooner Sprightling Sea was run down and sunk. The schooner was ascending the river, close hauled on her starboard tack, on the easterly side, at the rate of some four knots an hour, out of the channel, and close to the shoals. The wind was south; the night dark. The steamer was descending the river with her three lights burning, at the rate of some six knots the hour, and was discerned by those on board the schooner three or four miles off. On discovering her, a hand was ordered to show a light, which was done by hoisting a lantern on the forward part of the schooner, and was held there until the collision. The steamer saw the light for a few moments and lost sight of it; but, as the hands on board of her concur in stating, saw it over the larboard side of the vessel, and on the western shore of the river, and in order to avoid any danger, ported helm, and sheered nearer to the eastern. Soon after this the light was again seen, but too late to avoid the collision. The misfortune was doubtless owing to a mistake of the hands on the steamer as to the position of this light. Instead of being on the western it was on the eastern side of the river. All the hands on the schooner concur in this, and they cannot be mistaken; the vessel had

not changed her course from the time the light was exhibited, and she had been running this course some time before.

The only doubt in the case is whether or not the light was exhibited early enough to warn the steamer of her danger. The night was dark, and in the absence of any light on the schooner, there would be great difficulty in charging the steamer with fault. The joint speed of the two vessels was some ten miles the hour,—a mile in six minutes. The shortest time stated by any witness on the schooner, between the showing of the light and the collision, was five or six minutes. The steamer, then, must have been about a mile distant from the schooner, and if a vigilant lookout had been kept, afforded sufficient time to have avoided her. But a stronger ground is that the steamer saw the light early enough to have taken the proper precaution. And although she lost sight of it, she was admonished that a vessel was approaching in an opposite direction; and, considering the darkness of the night, she should have slackened speed, or come to anchor until she ascertained her course or position. It is true she saw the light on the western side of the river, and took the proper steps to avoid any danger. But in this she was mistaken. The light was on the eastern side, and she must be held responsible for the error. Besides, considering the darkness of the night and the narrowness of the channel of the river navigable, she should have had a competent lookout stationed in the forward part of the vessel, whose sole business was to discern vessels approaching and give the earliest warning. It is more than probable that if this precaution had been taken the misfortune would not have occurred.

We think the decree of the court below right, and it should be affirmed.